**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **UNITED STATES**, <br><br> v. <br><br> **JUAN SANCHEZ HIDALGO**, <br><br>     Defendant. | Case No. 7:14-CR-48 (HL) |

### ORDER

This case is before the Court on the Government's Motion for Revocation of Release Order. (Doc. 215). Upon conducting a *de novo* review, the Court adopts the findings of fact and conclusions of law of United States Magistrate Judge Thomas Q. Langstaff and orders Defendant released subject to the conditions set forth in the Order Setting Conditions of Release. (Doc. 212).

**I.     BACKGROUND**

Defendant Juan Sanchez Hidalgo was indicted on December 9, 2014, in a seventeen-count indictment charging a cocaine and cocaine base conspiracy involving firearms in violation of Title 21, United States Code, Sections 846, 841, and 856, and Title 18 United States Code, Sections 924(c) and 2. (Doc. 1). Defendant is named only in Count One of the indictment, which alleges that Defendant participated in a conspiracy to possess with intent to distribute cocaine and cocaine base.

Defendant appeared before Judge Langstaff on January 13, 2015, for a detention hearing. Following two days of testimony, Judge Langstaff determined that Defendant effectively rebutted the presumption in favor of detention. Judge Langstaff stated that "the Court does not have the danger concern with [this Defendant]. Instead the question is really the flight risk." (Doc. 253, p. 110). In making his final decision, Judge Langstaff considered the factors set forth in 18 U.S.C. § 3142(g). He noted that Defendant, a Lawful Permanent Resident but not a United States citizen, has only resided in Georgia for two years. (Doc. 253, p. 110). He has ongoing relationships in El Paso, Texas, which the court took judicial notice as being in close proximity to the United States / Mexico border. (Id.). Judge Langstaff further took into account the immigration detainer issued by the Department of Homeland Security, which, if convicted, could lead to Defendant's deportation and thus provides a reason to flee. (Id.).

However, in reviewing the evidence, Judge Langstaff found that there is no direct evidence linking Defendant to transporting narcotics. (Doc. 253, p. 111). Judge Langstaff opined that the only evidence before the court of Defendant's role in the conspiracy is as a courier, though "[i]t's hard to imagine that Mr. Hidalgo was not aware of what he was transporting." (Id.).

Ultimately, Judge Langstaff determined that the court could set conditions that would reasonably assure Defendant's appearance at future court proceedings. Judge Langstaff then ordered a $15,000 bond secured by ten

2

percent. (Doc. 253, p. 112). In addition to the bond, Judge Langstaff entered an order setting the following conditions of release:

- Defendant must not violate any federal, state, or local law while on release.

- Defendant must cooperate with the collection of DNA if authorized by federal law.

- Defendant must advise his supervising officer in writing of any change in address or telephone number.

- Defendant must appear in court as required.

- If convicted, Defendant must surrender as directed to serve any sentence imposed.

- Defendant shall submit to supervision by the United States Probation Office.

- Defendant will continue or actively seek employment.

- Defendant will surrender any passport to Probation. Defendant shall not obtain a passport or any other travel document.

- Defendant's travel shall be restricted to the State of Georgia unless he first receives approval from the United States Probation Office.

- Defendant shall not possess a firearm, destructive device, or other weapon.

- Defendant shall not use alcohol excessively.

3

- Defendant shall not use or unlawfully possess a narcotic drug or any other controlled substance unless prescribed by a medical doctor.

- Defendant shall be subject to a curfew from 9 p.m. to 6 a.m., during which hours he must remain at his home with the exception of employment, education, religious services, medical, substance abuse, or mental health treatment, attorney visits, court appearances, court ordered obligations, or other activities for which Defendant receives prior approval.

- Defendant shall submit to location monitoring at his own expense.

- Defendant shall report to his supervising officer any contact with law enforcement, including for any arrest, questioning, or traffic stop.

(Doc. 212; Doc. 253, pp. 111-13)

The Government immediately announced its intent to seek review of the release order by the district court and moved the magistrate court to stay the order for pretrial release. Judge Langstaff granted the motion to stay and ordered the Government to file any motion for review of the Order Setting Conditions of Release for Defendant Hidalgo by January 14, 2015. (Doc. 208).

This Court thereafter ordered the parties to appear on January 27, 2015, for a hearing on the Government's motion. Unfortunately, the transcript of the proceedings held before Judge Langstaff was not available for the Court's review prior to the hearing. Thus, the Court determined that the most expeditious course

4

of action was to permit the Government to present any additional evidence it wished the Court to consider, and the Court would reserve ruling until such time as the transcripts became available.

## II.   STANDARD OF REVIEW

When a magistrate orders a defendant's pretrial release, the government may seek prompt review of the order by the district court. 18 U.S.C. § 3145(a). The district court reviews the magistrate's bail decision *de novo.* United States v. Jeffries, 679 F. Supp. 1114, 1115 (citing United States v. Gaviria, 828 F.2d 667, 670 (11th Cir. 1987)). In conducting an independent review regarding the appropriateness of pretrial release a hearing is not required, and the court may explicitly adopt the findings and conclusions of the magistrate, or the court may decide that additional evidence is required and conduct an independent hearing. United States v. King, 849 F.2d 485, 490 (11th Cir. 1988). "[I]f the district court determines that the additional evidence does not affect the validity of the magistrate's findings and conclusions, the court may state the reasons therefor and then explicitly adopt the magistrate's pretrial detention order." Id. at 490-91.

## III.   DISCUSSION

The Bail Reform Act, which governs the pretrial release or detention of defendants, creates a rebuttable presumption in favor of releasing defendants on bond pending trial, with the exception of certain offenses where the presumption is against release:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . [a federal drug offense] for which the maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.).

18 U.S.C. § 3142(e)(3)(A). "A grand jury indictment provides the probable cause required by the statute to trigger the presumption." United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990) (citing United States v. Hurtado, 770 F.2d 1467, 1479 (11th Cir. 1985)).

In a case where the statutory presumption is against release, the defendant then must satisfy the burden of producing evidence to rebut the presumption. Id.; see also Hurtado, 770 F.2d at 1470 n. 4 ("Once the government establishes probable cause it becomes the task of the defendant to come forward with some quantum of evidence contrary to the fact presumed by the statute."). If the evidence presented by the defendant is sufficient to rebut the statutory presumption, the presumption, "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relative to the factors listed in Section 3142(g)." King, 849 F.2d at 488. Those factors include (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the defendant, including the defendant's family and community ties, employment and financial

resources, and criminal history; and (4) the nature and seriousness of the danger posed by the defendant to any person or the community. 18 U.S.C. § 3142(g). The burden of persuasion rests with the government to show either by a preponderance of the evidence that the defendant poses a risk of flight and that no condition or combination of conditions will reasonably assure the defendant's presence at future court proceedings or by clear and convincing evidence that the defendant poses a danger to the community. Quartermaine, 913 F.3d at 917.

Defendant here was indicted under 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(iii) with conspiring to possess with intent to distribute cocaine and cocaine base, a charge which carries a maximum term of imprisonment in excess of ten years. Thus, the presumption is against release. 18 U.S.C. § 1342(e). Judge Langstaff found that Defendant met the burden of production to overcome the statutory presumption. The burden of persuasion thereafter shifted to the Government to show by a preponderance of the evidence that Defendant poses a risk of flight or by clear and convincing evidence that Defendant is a danger to the community.

Based off his review of the evidence, Judge Langstaff articulated that "the Court does not have the danger concern it did with the other two defendants," who appeared for detention hearings along with Defendant. In other words, Judge Langstaff determined that the Government did not prove by clear and convincing evidence that Defendant, if released, poses a risk to the community.

7

Judge Langstaff found, and this Court agrees, that the primary evidence of Defendant's involvement in the alleged conspiracy relates to Defendant's role as a money courier. The Government presented some evidence at the detention hearing of conversations between two of the primary co-conspirators during which it was implicated that funds would be acquired from Defendant to fill a gap in the financing required to make a pending buy of narcotics. (Doc. 252, p. 38, 47). However, there was no evidence offered that Defendant made any actual contribution or that he even had the financial means to provide the money. (Doc. 252, pp. 40-41). At the time of Defendant's arrest, he was in possession of $225,973. (Doc. 252, p. 56, 58). Again, there was no evidence proffered that those funds belonged to or were acquired by Defendant, only that he agreed to transport the money between Tifton and Atlanta, Georgia. (Doc. 252, pp. 56, 100-101, 130). The Government also presented no evidence or testimony that Defendant in any way arranged for the purchase, delivery, and resale of narcotics, though he likely was present when these transactions transpired and may have quoted a price he would charge were he to agree to transport any drugs. (Doc. 252, pp. 93-96, 98).

The additional evidence offered by the Government in the course of the hearing held before this Court does not affect the soundness of Judge Langstaff's findings. Georgia Bureau of Investigations Agent Luke Stripling testified that following Defendant's detention hearing he conducted a secondary

interview of Andrew Carter, one of the primary targets of the underlying investigation. Agent Stripling's testimony confirmed that Defendant primarily transported money in furtherance of the conspiracy. (Doc. 254, pp. 10, 12, 19). Defendant also allegedly followed a co-defendant who was carrying drugs between Atlanta and Tifton to ensure delivery. (Doc. 254, pp. 12-14, 19-20). Andrew Carter reported to Agent Stripling that he "understood José Martinez to indicate that [Defendant] was providing some of his money into the purchase of cocaine," yet there is no evidence that Andrew Carter ever had any direct contact with Defendant or any direct knowledge that Defendant made a financial contribution. (Doc. 254, pp. 10, 16, 18).

Agent Stripling further offered an account from Andrew Carter that Defendant at some point during the pendency of the conspiracy traveled back to Texas. (Doc. 254, p. 11). Defendant allegedly stole a quantity of cocaine that he transported back to Georgia and gave to José Martinez, who then sold half to Andrew Carter. (Doc. 254, pp. 11-12). Andrew Carter has no personal knowledge of how José Martinez acquired the drugs Carter purchased on this occasion, and the Government offered no independent evidentiary basis to support Carter's story. (Doc. 254, p. 20). Accordingly, the Court affords this particular bit of evidence little weight.

Judge Langstaff's decision to grant Defendant pretrial release ultimately rested on his finding that while there certainly are factors that raise concern

about the likelihood that Defendant will attempt to flee the jurisdiction prior to trial, those concerns may be alleviated by fashioning appropriate conditions of release. Defendant has limited ties to the jurisdiction, having only resided in Georgia for about a year and half. (Doc. 253, pp. 38, 42). Defendant crossed the United States border with his parents sometime around age nine and lived in Texas the majority of his life. (Doc. 253, pp. 38-39). He later acquired legal status. Most of his family now lives in the Tifton, Georgia area, though his two adult children live in Mexico. (Doc. 253, pp. 40-41). As a result of the pending charges, the Department of Homeland Security issued an immigration detainer. In the event of his conviction, Defendant faces deportation.

However, it is also clear from the record that Defendant has limited criminal history beyond a 2004 DUI charge in El Paso, Texas. (Doc. 252, p. 105). There also is no evidence that he resisted arrest or attempted to evade law enforcement. (Doc. 252, pp. 99, 106). Defendant owns no property outside of Tifton, and investigators have located no offshore bank accounts or other significant financial resources linked to Defendant. (Doc. 252, pp. 101-102).

Upon review of the transcripts, and after considering the additional evidence put forth by the Government, the Court finds Judge Langstaff's reasons for granting Defendant pretrial release sound and accordingly adopts his findings of fact and conclusions of law. It is clear from the evidence that Defendant played a limited role in the alleged conspiracy. He acted at the direction of his co-

conspirators, who have been detained pending trial, and primarily served as a money courier. Thus, as stated by Judge Langstaff, the Court's primary concern in this case is not whether Defendant poses a risk to the community but whether the Court can fashion appropriate conditions to ensure Defendant's future appearances. The Court agrees with Judge Langstaff's assessment that such conditions are attainable and thus adopts the conditions previously imposed.

## IV. CONCLUSION

The Court adopts the findings of fact and conclusions of law of United States Magistrate Thomas Q. Langstaff. The Government's motion for revocation of the release order (Doc. 215) is denied. Defendant is ordered released subject to the conditions set forth in Judge Langstaff's January 13, 2015, Order Setting Conditions of Release. (Doc. 212).

**SO ORDERED** this 11th day of February, 2015.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

aks